IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARYL A. LUDY, | ) | |
| Plaintiff | ) | |
| | ) | **C.A. 06-74 Erie** |
| v. | ) | **District Judge McLaughlin** |
| | ) | **Magistrate Judge Baxter** |
| JAMES SHERMAN, et al., | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.      RECOMMENDATION

It is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [Document # 16], be granted.

### II.     REPORT

On March 23, 2006, Plaintiff Daryl A. Ludy, a prisoner incarcerated at the Federal Correctional Institution at McKean, Pennsylvania ("FCI-McKean"), originally filed this civil rights action pursuant to Bivens v. Six Unnamed Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against Defendants James Sherman, Warden at FCI-McKean ("Sherman"); Jimmie Ward, a Physician's Assistant at FCI-McKean ("Ward"); and Rodney Smith, Health Services Administrator at FCI-McKean ("Smith").

Plaintiff alleges that the Defendants have violated his Eighth Amendment rights by exhibiting deliberate indifference to his medical need for a soft shoe pass and "appropriate footwear" that he allegedly requires as a "Diabetic with Neuropathy." (Complaint, Section IV.C). In addition, Plaintiff alleges that he has suffered racial discrimination and/or a violation of his equal protection rights as a result of comments that were made by Defendant Ward, which Plaintiff has deemed to be racist. (Complaint, Section IV.C. at ¶¶ 7-8). As a result of these claims, Plaintiff seeks injunctive relief, in the form of a soft shoe pass and appropriate footwear, as well as a restraining order preventing Defendant Ward from treating him in the future.

(Complaint, Section VI).

Defendants have filed a motion to dismiss, or in the alternative, motion for summary judgment [Document # 16], asserting that: (i) Plaintiff has failed to properly exhaust his administrative remedies with regard to his racial discrimination and/or equal protection claim(s); (ii) Plaintiff cannot demonstrate that Defendants exhibited "deliberate indifference" to his medical needs; and (iii) Plaintiff has failed to state a claim upon which relief may be granted against Defendants Sherman and Smith.  Plaintiff has filed a response to Defendants' motion essentially restating his allegations. [Document # 20].[1]  This matter is now ripe for consideration.

### A.      Factual History

On November 18, 2004, Plaintiff was designated to FCI-McKean to serve a 40 month term of imprisonment, to be followed by a three year term of supervised release, for Conspiracy to Commit Federal Crimes, Money Laundering/Laundering of Monetary Instruments, and Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 371, 1956(a)(1), and 922(g)(1). (Document # 17, Exhibit 1a, at p. 2).  Assuming Plaintiff receives all Good Conduct Time available, his projected release date is September 6, 2007. (Id. at p. 4).

Upon his arrival at FCI-McKean, Plaintiff underwent a medical intake screening, during which Plaintiff reported that he was taking Prilosec for acid reflux, but had no medical disabilities or restrictions. (See Declaration of Dennis Olson, M.D., Clinical Director at FCI-McKean, attached as Exhibit 2 to Document # 17 ("Olson Declaration"), at ¶ 3a).  However, on December 13, 2004, Plaintiff was assessed with diabetes mellitus, for which his blood sugar has

---

[1]

Plaintiff's response also seeks leave to amend his complaint to add additional defendants; however, the claims against the individuals sought to be added are based entirely upon and/or are essentially identical to the claims addressed herein.  Thus, an amendment adding new defendants would be frivolous.

since been monitored frequently by FCI-McKean's medical staff.[2]

On July 11, 2005, Plaintiff complained to a Physician's Assistant of episodic pain, coupled with a tingling or burning sensation, in his left lower extremity, from the back of his thigh and leg to his Achilles tendon and foot. Plaintiff also complained of pain in his right lower extremity at his foot. Plaintiff indicated that the pain started two weeks earlier after he had played basketball. It was noted that Plaintiff had a history of herniation and rupture of the lumbosacral spine at L4-5, for which he had three surgeries, including laminectomy and fusion. After physical examination, Plaintiff was assessed with neuropathy at L5/S1, and an x-ray of his lumbar spine was taken. (Olson Declaration at ¶ 3cc). The x-ray revealed post-laminectomy changes, but was otherwise unremarkable. (Olson Declaration at ¶ 3dd). Plaintiff was prescribed Tylenol, and was educated to use moist compresses and to perform stretching exercises. (Olson Declaration at ¶ 3cc).

On August 25, 2005, Plaintiff complained to Defendant Ward that he had been experiencing numbness behind his left knee, behind his right ankle, and along the right side of his right foot for 7 months. During physical examination, Defendant Ward noted that both legs were of equal strength, and that the deep tendon reflexes at L-4 and S-1 of the spine were equal. Defendant Ward assessed Plaintiff with questionable neuropathy and questionable cutaneous paresthesias (abnormal burning or prickling sensation). (Olson Declaration at ¶ 3hh).

On February 26, 2006, Plaintiff submitted a written request to Dr. Olson complaining that his boots were causing him pain and requesting a soft shoe pass. In response, Dr. Olson advised Plaintiff to fill out a sick call form to be evaluated by a physician's assistant. (Olson Declaration at ¶ 3zz).

On March 13, 2006, Plaintiff complained to Defendant Ward that he had been

---

[2]

In his Declaration, Dr. Olson provides a lengthy summary of all medical treatment Plaintiff received at FCI-McKean from November 18, 2005 through July 11, 2006. In addition to treatment for his lower extremities and feet, the majority of Plaintiff's medical records detail the treatment and monitoring of his diabetes. In the interest of brevity, this Court will only recount Plaintiff's medical treatment history to the extent it relates to Plaintiff's complaints regarding his lower extremities and feet.

experiencing numbness in both feet for about a year.  During physical examination, Defendant

Ward noted that both feet looked well, and he observed no swelling, ecchymosis, or evidence of

crepitus in the Achilles.  He noted further that Plaintiff's symptoms were subjective, as he had

complete range of motion in both ankles, the pulses in his foot and ankle areas were normal, he

had equal strength on both sides, and, neurologically, his feet were intact and equal.  Defendant

Ward indicated that Plaintiff was obviously exaggerating his reactions and reflexes, and that he

had flat feet.  He assessed Plaintiff with mild cutaneous paresthesias of the right post ankle area

and denied Plaintiff a soft shoe pass, stating that it was not medically necessary at that time.

Defendant Ward noted that Plaintiff was not happy about the denial of his soft shoe pass, and

that Plaintiff may have attempted to skew the physical exam to obtain the pass. (Olson

Declaration at ¶ 3aaa).

It was during this last examination on March 13, 2006, that Plaintiff claims Defendant

Ward made racially insensitive remarks.  In particular, Plaintiff claims that Defendant Ward

responded to Plaintiff's request for a soft shoe pass by stating that "you people, always have to

wear shiny new shoes and drive fancy new cars ...." (Complaint, Section IV at ¶ 7).

On March 23, 2006, Plaintiff initiated the instant action.  As part of his Complaint in this

matter, Plaintiff requested an emergency restraining order requiring Defendants to issue him a

soft shoe pass.  A telephonic hearing on this request was held by this Court on July 17, 2006.

During this hearing, Plaintiff explained that the numbness in his feet became more apparent

when he wore the boots he was required to wear to noon meals, which caused him to skip the

meals to avoid having to wear the boots. (Document # 14 at p. 3).  However, Plaintiff did not

dispute Defendants' counsel's representation that the medical record does not disclose any

evidence of neuropathy in Plaintiff's feet, which is required for a soft shoe pass. (Document

# 14 at p. 3).

Based on the lack of medical evidence, this Court issued a Report and Recommendation,

dated July 19, 2006, recommending that Plaintiff's request be denied. [Document # 14].[3]  In an attempt to alleviate Plaintiff's condition, however, this Court requested that Defendants measure Plaintiff's feet to determine whether larger boots would provide relief. (Document # 14 at p. 3).

In response to this Court's request, Defendants had Plaintiff's feet re-measured on or about July 19, 2006, which revealed that Plaintiff's shoe size was a 10½ D.  Although Plaintiff was wearing size 10½ boots at the time, Defendants had him try on a pair of size 11 boots. After Plaintiff reported that the size 11 boots fit him well, his size 10½ boots were exchanged for a pair of size 11 boots. (Document # 17, Exhibit 1c).

### B.    Standard of Review

#### 1.    Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief.  The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974).  However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse

---

[3]

This Report and Recommendation was subsequently adopted by District Judge Sean J. McLaughlin by Memorandum Order dated August 16, 2006. [Document # 15].

v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat

Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997).  Therefore, in order to

survive a motion to dismiss for failure to state a claim, the complaint must only set forth

sufficient information to suggest that there is some recognized legal theory upon which relief

can be granted.  See Swierkiewicz.


###   2.        Summary Judgment

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted

if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when

a motion for summary judgment is made and supported, "an adverse party may not rest upon the

mere allegations or denials of the adverse party's pleading, but the adverse party's response, by

affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is

a genuine issue for trial. If the adverse party does not so respond, summary judgment, if

appropriate, shall be entered against the adverse party."  Id.

A district court may grant summary judgment for the defendant when the plaintiff has

failed to present any genuine issues of material fact.  See Fed.R.Civ.P. 56(c); Krouse v.

American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997).  The moving party has the initial

burden of proving to the district court the absence of evidence supporting the non-moving

party's claims.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v.

Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990).  Further,

"[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential

fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation

continues.'"  Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting

Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a

genuine issue for trial.  Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986);

Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

### 3.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith

v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections,
949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe
all allegations in a complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d
Cir.1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P.
12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir.
1990)(same).


      **C.     Exhaustion Requirement**

     The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of
> this title ... by a prisoner confined in any jail, prisons, or other correctional
> facility until such administrative remedies as are available are exhausted.

Id.

     The requirements that an inmate exhaust administrative remedies applies to all inmate
suits regarding prison life, including those that involve general circumstances as well as
particular episodes.  Porter v. Nussle, 534 U.S. 516 (2002).  See also Concepcion v. Morton,
306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement).  Administrative
exhaustion must be completed prior to the filing of an action.  McCarthy v. Madigan, 503 U.S.
140, 144 (1992).  Thus, federal courts are barred from hearing a claim if a plaintiff has failed to
exhaust all the available remedies.  Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL
2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[4]   A plaintiff need not affirmatively
plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly
presented by a defendant.  Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no
provision of the PLRA requires pleading exhaustion with particularity," while construing the
PLRA requirements in light of the recent Supreme Court decision in Swierkiewicz v. Sorema,

---

[4]

Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject
matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of
courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive
federal courts of subject matter jurisdiction.").

N.A., 534 U.S. 506 (2002)).

The exhaustion requirement is not a technicality, rather it is federal law which federal
district courts are required to follow.  Nyhuis, 204 F.3d at 73 (by using language "no action shall
be brought," Congress has "clearly required exhaustion").  There is no "futility" exception to the
administrative exhaustion requirement.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002)
citing Nyhuis, 204 F.3d at 78.


### 1.      The Procedural Default Component

The United States Court of Appeals for the Third Circuit has explicitly held that the
exhaustion requirement of the PLRA includes a procedural default component, by analogizing it
to the exhaustion doctrine (with its corollary procedural default component) in the habeas
context.  Spruill v. Gillis,  372 F.3d 218, 228-229 (3d Cir. June 18, 2004).[5]  The Circuit
explained:

> We believe that Congress's policy objectives will be served by
> interpreting § 1997e(a)'s exhaustion requirement to include a procedural
> default component. Based on our earlier discussion of the PLRA's
> legislative history, [...] Congress seems to have had three interrelated
> objectives relevant to our inquiry here: (1) to return control of the inmate
> grievance process to prison administrators; (2) to encourage
> development of an administrative record, and perhaps settlements,
> within the inmate grievance process; and (3) to reduce the burden on the
> federal courts by erecting barriers to frivolous prisoner lawsuits. Each of
> these goals is better served by interpreting § 1997e(a)'s exhaustion
> language to include a procedural default component than by interpreting
> it merely to require termination of all administrative grievance
> proceedings.

Id.  Having concluded that the PLRA includes a procedural default component, the Court then
indicated that "prison grievance procedures supply the yardstick for measuring procedural
default."  Id. at 231.

---

[5]

There is an emerging split of authority among the Circuits on this issue.  Compare  Ross v. County of Bernalillo,
365 F.3d 1181 (10th Cir. 2004), and  Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum,
337 F.3d 720 (6th Cir. 2003).

## 2.    Exhaustion and Procedural Default applied

No analysis of exhaustion may be made absent an understanding of the administrative process available to inmates.  The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19 (1997).   First, "an inmate shall ... present an  issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a).  "The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request [to the Warden], on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred."  28 C.F.R. § 542.14(a).   In the event an Administrative Remedy Request is filed, the warden has twenty (20) days in which to respond.  28 C.F.R. § 542.18.  An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP-10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response.  28 C.F.R. § 542.15(a).   An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP-11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response.  Id.  The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond.  28 C.F.R. § 542.18.

In this case, Plaintiff readily admits in his Complaint that he "didn't start a grievance on my complaint because I believed that, by the time the grievance process have [sic] started I would have been already serious [sic] medically neglected beyond repair." (Complaint, Section V.D).  In fact, Defendants have submitted the Declaration of Joyce Horikawa, Senior Attorney Advisor, United States Department of Justice, who confirms that Plaintiff's initial Request for Administrative Remedy was not filed until April 13, 2006, or twenty days after this case had already been filed.. (Document # 17, Exhibit 1 at ¶ 6 and Exhibit 1b).  Nonetheless, Defendants have inexplicably moved to dismiss only Plaintiff's claims of racial discrimination and/or equal

protection on the basis of his failure to exhaust administrative remedies.[6]

Under the PLRA, Plaintiff was required to submit a formal written Administrative Remedy Request [to the Warden], on the appropriate form (BP-9), within 20 calendar days following the date on which the basis for the Request occurred.  28 C.F.R. § 542.14(a).  This he did not do with regard to his racial discrimination and/or equal protection claims.  It is apparent that Plaintiff procedurally defaulted on these claims and, thus, failed to exhaust his available administrative remedies regarding these claims.  As a result, this Court is barred from hearing Plaintiff's racial discrimination and/or equal protection claims and such claims should be dismissed.

### D.      Discussion

Since Plaintiff's failure to exhaust administrative remedies may not be raised *sua sponte*, this Court is compelled to address the merits of Plaintiff's claim that Defendants have exhibited deliberate indifference to his serious medical needs.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976).  "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

---

[6]

In footnote 1 of their brief, Defendants acknowledge that Plaintiff failed to exhaust his administrative remedies on any of the issues raised in this case prior to the filing of his Complaint.  Defendants go on to confirm that Plaintiff did not exhaust his administrative remedies with regard to his medical claims until August 2, 2006 - 3½ months **after** this case was filed.  Nevertheless, Defendants have apparently chosen to ignore this obvious procedural defect by declaring that they "will not assert an exhaustion defense for those issues," thus effectively waiving their right to raise the defense.  In so doing, Defendants have essentially disregarded the case authority cited in their own brief for the proposition that the administrative remedy process must be completed **before** the filing of a lawsuit. (Document # 37 at p. 9, citing Porter v. Nussle, 534 U.S. 516, 521-25 (2002); Booth v. Churner, 532 U.S. 731, 736 (2001); and Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000)).

Deliberate indifference to a serious medical need[7] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104.  Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury,  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury"  White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation.  Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted).  "[M]ere disagreements over medical judgment" do not rise to the level of an Eighth Amendment violation.  White, 897 F.2d at 110. Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate.  Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").  Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment.  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977).

In this case, Plaintiff is essentially claiming that he has diabetic neuropathy in his feet, a serious medical need towards which Defendants have acted with deliberate indifference by their denial of a soft shoe pass and appropriate footwear.  However, as noted earlier, Plaintiff's medical record is devoid of any diagnosis or medical opinion that Plaintiff does, in fact, have diabetic neuropathy.  To the contrary, Defendant Ward opined that Plaintiff's symptoms were

---

[7]

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

subjective and that Plaintiff was obviously exaggerating his reactions and reflexes during examination.  As a result, Defendant Ward determined that a soft shoe pass was not medically necessary. (Olson Declaration at ¶ 3aaa).  This Court is not in a position to second guess the opinion of a medical professional, especially given the absence of a contrary medical opinion.  The medical record clearly demonstrates that Plaintiff's medical needs as a diabetic have been regularly monitored and treated by FCI-McKean's medical staff.  As a result, Plaintiff is unable to demonstrate that Defendants' actions have constituted deliberate indifference to his serious medical needs.  Although Plaintiff may disagree with the treatment he has been receiving, a prisoner's disagreement with a course of treatment does not sustain a cognizable constitutional claim.  Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 (3d Cir. 1976).

### III     CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to dismiss or, in the alternative, motion for summary judgment [Document # 16], should be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: January 8, 2007

cc:     The Honorable Sean J. McLaughlin
        United States District Judge